UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

PETER NYGARD,

        *Defendant.*

20 Cr. 624 (PGG)

---

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT PETER NYGARD'S
MOTION CHALLENGING POST-INDICTMENT RESTRAINING ORDER AND
SEEKING RETURN OF PROPERTY**

DANIELLE R. SASSOON
United States Attorney for the
Southern District of New York

Celia V. Cohen
Jacqueline C. Kelly
Allison C. Nichols
Assistant United States Attorneys
    *Of Counsel*

**Table of Contents**

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 1

   I.    Charges and Procedural History ...................................................................... 1

   II.   The Post-Indictment Restraining Order ....................................................... 4

DISCUSSION ........................................................................................................ 6

   I.    The Motion is Precluded by the Fugitive Disentitlement Doctrine ...................... 6

   II.   Nygard Has Not Made the Requisite Showing for a Probable Cause Hearing....... 9

      A.   Applicable Law ................................................................................. 10

      B.   Nygard Is Not Entitled to a Hearing, Discovery, or Grand Jury Minutes ........ 11

   III.  Nygard is not Entitled to Pre-Trial Return of Evidence ................................... 13

      A.   Applicable Law ................................................................................. 13

      B.   Nygard is Not Entitled to Return of Seized Evidence ...................................... 14

CONCLUSION.......................................................................................................... 16

## Table of Authorities

Cases                                                                                   Page(s)

*Acosta v. United States*,
    2013 WL 2444172 (E.D.N.Y. June 5, 2013) ........................................................ 15

*Bourne v. United States*,
    No. 21-2497, 2023 WL 3102700 (2d Cir. Apr. 27, 2023) ...................................... 13

*Caplin & Drysdale, Chartered v. United States*,
    491 U.S. 617 (1989) ............................................................................................... 10

*Collazos v. United States*,
    368 F.3d 190 (2d Cir. 2004) .................................................................................... 7

*Degen v. United States*,
    517 U.S. 820 (1996) ............................................................................................... 8

*Ferreira v. United States*,
    354 F. Supp. 2d 406 (S.D.N.Y. 2005) ..................................................................... 14

*Hamling v. United States*,
    418 U.S. 87 ............................................................................................................ 13

*Kaley v. United States*,
    571 U.S. 320 (2014) ............................................................................................... 11

*Kee v. United States*,
    2001 WL 897175, at (S.D.N.Y. Aug. 9, 2001) ....................................................... 15

*Lavin v. United States*,
    299 F.3d 123 (2d Cir. 2002) .................................................................................... 15

*Molinaro v. New Jersey*,
    396 U.S. 365 (1990) ............................................................................................. 6, 7

*SEC v. Ahmed*,
    72 F.4th 379 (2d Cir. 2023) .................................................................................... 8

*SEC v. Ahmed*,
    No. 3:15-CV-675 (JBA), 2016 WL 10572640 (D. Conn. Aug. 22, 2016) ............... 7

*SEC v. Roman*,
    No. 94 CIV. 3621 (SAS), 1996 WL 34146 (S.D.N.Y. Jan. 30, 1996) ...................... 7

*United States v. Aventura Technologies, Inc.*,
    607 F. Supp. 3d 278 (E.D.N.Y. 2022) ................................................................ 11

*United States v. Baccollo*,
    725 F.2d 170 (2d Cir. 1983) ............................................................................... 9

*United States v. Bonventre*,
    720 F.3d 126 (2d Cir. 2013) ........................................................................ 10, 11

*United States v. Chambers*,
    192 F.3d 374 (3d Cir. 1999) ............................................................................. 14

*United States v. Eng*,
    951 F.2d 461 (2d Cir. 1991) ........................................................................... 6, 7

*United States v. Farhat*,
    2022 WL 970780 (E.D.N.Y. Mar. 31, 2022) ................................................... 15

*United States v. Gotti*,
    244 F. Supp. 2d 120 (E.D.N.Y. 2003) .............................................................. 14

*United States v. Monsanto*,
    491 U.S. 600 (1989) .......................................................................................... 10
    924 F.2d 1186 (2d Cir. 1991) ........................................................................... 11

*United States v. Pena*,
    No. 95 CR. 130 (AGS), 2000 WL 257132 (S.D.N.Y. Mar. 8, 2000) ................ 14

*United States v. Silver*,
    2015 WL 1501619, 15 Cr. 93 (S.D.N.Y. March 31, 2015) ............................... 10

*United States v. Torres*,
    901 F.2d 205 (2d Cir. 1990) ............................................................................. 13

*United States v. Williams*,
    181 F. Supp. 2d 267 (S.D.N.Y. 2001) .............................................................. 15

Statutes

18 U.S.C. § 982 ...................................................................................................... 10

18 U.S.C. § 1591 ................................................................................................... 5, 9

18 U.S.C. § 1594 ...................................................................................................... 5

18 U.S.C. § 1594(e)(1)(A) .................................................................................. 5, 13

21 U.S.C. § 853(e) ....................................................................................................... 10

28 U.S.C. § 2466 .......................................................................................................... 7

Rules

Federal Rule of Criminal Procedure 41(g) ............................................................. 13, 14

The Government respectfully submits this memorandum in opposition to the motion of defendant Peter Nygard for (i) "a post seizure hearing . . . to establish whether the Government had/has requisite probable cause to restrain the assets identified in the [Post Indictment Restraining Order (the "PIRO")];" (ii) return of "personal property" seized from Nygard, his residence, and his office; and (iii) unsealing of the grand jury transcript "to demonstrate the lack of probable cause for the seizure of property, and the return of same, and that there was no vote by the Grand Jury that the property cited in the [PIRO] was voted on by the Grand Jury." (Dkt. 27-19, hereinafter the "Motion" or "Mot.").  As detailed below, the Motion should be denied because Nygard improperly seeks to invoke this Court's jurisdiction while simultaneously refusing to submit to it and because, in any event, the motion fails on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Charges and Procedural History

On or about November 23, 2020, a grand jury sitting in the Southern District of New York returned a sealed indictment (the "Indictment") charging Nygard with violations of Title 18, Sections 1962(d) (racketeering conspiracy), 1594 (sex trafficking conspiracy), 1591(b)(1) and (b)(2) (sex trafficking of a minor and by force, fraud and coercion), 1591(b)(1) (sex trafficking by force, fraud, and coercion), 1594 (sex trafficking conspiracy), 2423(a) (transportation of a minor for purposes of prostitution), and 2421 (transportation for purposes of prostitution).

During the relevant time period, Nygard operated a constellation of corporate entities organized in various countries, including Canada, the United States, and the Bahamas (collectively, the "Nygard Group").  Nygard, through the Nygard Group, also owned real property in various countries, including Canada, the Bahamas, and the United States.  As is relevant here, these properties included (i) residences at 1 Yawl Street, 17 ½ Yawl Street, and 5409 Ocean Front Walk, Marina del Rey, CA (the "Residential Properties"); and (ii) warehouses at 9450 Topanga

Canyon Boulevard, Chatsworth, California and 13700-13704 Saticoy Street, Los Angeles, California (the "Commercial Properties"). The Nygard Group also leased residential and office space located at 1435 Broadway, New York, New York (the "New York Property").

As alleged in the Indictment, from at least in or about 1995 to in or about 2020, Nygard and his co-conspirators, including employees of the Nygard Group, used corporate funds, employees, resources, and influence to recruit, entice, transport, harbor, and maintain adult and minor-aged female victims for sex with Nygard and with others at his direction, by, among other things, sex trafficking, interstate and international transport for purposes of engaging in prostitution and other illegal sexual activities, and related offenses. The Indictment alleges that Nygard used the Nygard Group, including its employees and funds, to further and facilitate this conduct, including by:

      a.    using Nygard Group funds to, among other things, (1) pay for recruiting events called "Pamper Parties" to identify and groom new sexual partners for Nygard; (2) to pay victims for sex – including some women referred to as "girlfriends" who were involved in longer-term sexual relationships with Nygard; (3) and to pay for various expenses for "girlfriends," including travel, living expenses, dental work, immigration assistance, plastic surgery, abortions, child support, and medical treatments, sometimes disguised as payroll or professional payments;

      b.    using Nygard Group employees to organize Pamper Parties and other victim-recruitment events at properties maintained by the Nygard Group, to arrange travel for "girlfriends" and other victims, to manage payments to "girlfriends," and to manage "girlfriend" and victim-related expenses;

      c.    using Nygard Group employees to recruit women and girls to attend Pamper Parties and other recruitment events by sending invitations and other communications to

prospective guests, and to screen the physical appearance of potential attendees to appeal to Nygard's personal preferences, and to photograph and register attendees in Nygard Group-maintained records;

       d.    using Nygard Group employees and other resources, including, at times, a private airplane, and corporate-funded commercial travel to arrange interstate and international travel for "girlfriends" and other victims, and to create and maintain travel-related records;

       e.    using Nygard Group employees for property management and security services at Nygard Group properties, to include arranging accommodations for "girlfriends," controlling access to the properties (refusing to let women and girls, including "girlfriends," leave without Nygard's approval), and driving Nygard and victims, including "girlfriends," to sex clubs; and

       f.    using Nygard Group employees and funds to intimidate, threaten, and corruptly persuade individuals who alleged that Nygard was involved in sexual assault and sex trafficking, including by paying witnesses for false statements and affidavits, threatening witnesses, and seeking to discredit their accounts.

On or about February 24, 2020, Nygard travelled from California to Canada through Minneapolis, Minnesota.  While Nygard was in the Minneapolis airport, FBI agents seized Nygard's cellphone pursuant to a court-issued search and seizure warrant.  Nygard travelled onward to Canada.

On or about February 25, 2020, FBI agents executed court-issued search and seizure warrants at the Residential Properties and the New York Property, seizing, among other things, various electronic devices.

Nygard has not returned to the United States since February 24, 2020.

Following return of the Indictment in November 2020, on or about December 15, 2020, Nygard was arrested pursuant to a provisional arrest warrant in Canada, and the Indictment was unsealed.  Nygard was ordered detained pending Canadian extradition proceedings.

Broadly speaking, Canadian extradition proceedings involve two phases: the "Judicial Phase" and the "Ministerial Phase."[1]  Nygard conceded the Judicial Phase but challenged his extradition in the Ministerial Phase.  On March 22, 2022, the Minister of Justice ordered Mr. Nygard's surrender to the United States, but only after criminal charges in Canada—which had been filed in the intervening two years—are resolved.  Several of these cases remain pending. While the Canadian criminal cases proceeded, Nygard sought judicial review of the Minster's surrender order, including as recently as May 2024.  In November 2024, the Supreme Court of Canada dismissed Nygard's application for leave to appeal.  Nygard's next Canadian trial is tentatively scheduled for September 2025, with another trial to follow sometime after that.

## II.    The Post-Indictment Restraining Order

Pursuant to the PIRO entered on May 26, 2021, Nygard, and all attorneys, agents, and employees, anyone acting on his behalf, and all persons or entities in active concern or participation with those parties, and all persons or entities with actual knowledge of the PIRO,

> shall not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of [the property and other interests restrained].

Dkt. 24.  The restrained property includes, without limitation "[a]ny and all property of Edson's Investments" and "[a]ny and all property of Brause Investments, Inc.," including but not limited to the Residential Properties and the Commercial Properties (collectively, the "Restrained

---

[1] *See* https://www.justice.gc.ca/eng/cj-jp/emla-eej/extradition.html.

Property").  *Id.*

Count Two of the Indictment charges Nygard with conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594, and Counts Three, Four, and Five charge substantive sex trafficking, in violation of 18 U.S.C. § 1591 (the "Sex Trafficking Offenses").  Title 18, United States Code, Section 1594(e)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in, used, or intended to be used to commit or to facilitate the commission of [these offenses], and any property traceable to such property."  As the Court necessarily found when it entered the PIRO, the Government's application for the PIRO established probable cause to believe that Edson's and Brause were both, as corporate entities, "involved in, used, or intended to be used to commit or to facilitate" the Sex Trafficking Offenses, and therefore that all of the assets of Edson's and Brause are subject to forfeiture pursuant to 18 U.S.C. § 1594(e)(1)(A).

The application setting forth probable cause for the entry of the PIRO remains under seal.  As referenced above, because Nygard remains in Canada pending extradition to the United States, he has not yet appeared in this criminal case and no discovery obligations have been triggered.  Nonetheless, as it has done in connection with prior litigation concerning the PIRO, the Government is providing here a high-level summary of the nature of the facts set forth in the application establishing probable cause for the PIRO.

The Government's sealed application to the Court set forth facts establishing that Nygard personally controlled Edson's and Brause, among other corporate entities in the Nygard Group, during the time period of the Sex Trafficking Offenses.  The application established that Nygard controlled the Nygard Group, and the entities within it, regardless of whether he was the registered owner or executive of certain subsidiary businesses, including Edson's and Brause.  Throughout the relevant time period, Nygard's control of Edson's and Brause included directing other

employees to carry out his directives regarding staffing, real estate transactions, and the funding of financial accounts belonging to other Nygard Group entities, some of which were also used to commit the Sex Trafficking Offenses. The application further set forth facts to show that Edson's and Brause, as entities, were involved in and used by Nygard and others to commit the Sex Trafficking Offenses in a variety of ways, including the use of Edson's and Brause employees and corporate officers, funds from Edson's and Brause bank accounts, and the use of real property owned by Edson's and Brause. These means and methods that Nygard used included, but were not limited to, particular assets or real properties owned by Edson's and Brause. Based on the Government's showing of probable cause that the entities themselves were involved in and used to commit the Sex Trafficking Offenses, the Government sought and the Court granted an order restraining any and all assets of those entities.

## DISCUSSION

### I. The Motion is Precluded by the Fugitive Disentitlement Doctrine

The Court should deny Nygard's motion pursuant to the fugitive disentitlement doctrine.

"The disentitlement doctrine, which may be invoked at the discretion of the court, is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." *United States v. Eng*, 951 F.2d 461, 465 (2d Cir. 1991), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820 (1996) (quoting *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1990)). Fugitive status does not literally require a defendant to be "on the run." *Id.* at 464. "When a person purposely leaves the jurisdiction or decides not to return to it, in order to avoid prosecution, he is a fugitive. Thus, a defendant with notice of criminal charges who actively resists returning from abroad to face those charges is a fugitive from justice, even when he has no control over his physical movements because of being imprisoned in a foreign country." *Id.* at 464–65.

In particular, "[w]hen a person actively resists extradition [. . .], he has constructively fled the United States and thus is a fugitive." *Id.* at 466.

Although the disentitlement doctrine is commonly invoked in the appellate context, it has also been the basis for district courts to deny discovery motions. For example, a district court denied a motion for discovery brought by a defendant who was resisting her extradition from Canada to face federal criminal charges in the United States. *See* 1 Federal Criminal Practice: A Second Circuit Handbook § 34A-5 (2022) (citing *United States v. Huawei Technologies Co., Ltd.*, No. 18-CR-457 (AMD) (E.D.N.Y.), July 23, 2020 Status Conference Tr. at 18). Similarly, "the doctrine has been applied [. . .] to deny discovery to a defendant in a civil action who was a fugitive in a related criminal action." *Id.* (citing *SEC v. Roman*, No. 94 CIV. 3621 (SAS), 1996 WL 34146, at *1 (S.D.N.Y. Jan. 30, 1996); *SEC v. Ahmed*, No. 3:15-CV-675 (JBA), 2016 WL 10572640, at *1 (D. Conn. Aug. 22, 2016)). Indeed, in the civil forfeiture context, a defendant cannot resist appearance in a criminal case while also litigating civil forfeiture. *See* 28 U.S.C. § 2466; *Collazos v. United States*, 368 F.3d 190 (2d Cir. 2004).

Here, Nygard is unquestionably a fugitive. He has been on notice of the Government's investigation since February 2020, when the FBI not only seized Nygard's phone from his person, but also searched two of Nygard's U.S. properties. Following these searches, Nygard chose to travel from the United States to Canada and not to return to the United States, despite owning and leasing properties here at which he previously spent significant time, including while committing the crimes charged in the Indictment. Moreover, Nygard has been on notice of the Indictment, including the detailed allegations therein, since his arrest in Canada in December 2020. Since that time, Nygard has actively resisted his extradition to face the charges in the Indictment, appealing his extradition order all the way to the Supreme Court of Canada. Indeed, both Nygard and his

attorney represent in declarations accompanying the Motion that Nygard is making only a "limited appearance." Dkt. 27-1 ¶ 2; 27-2 ¶ 2. But in fact, Nygard has made *no* appearance in this Court; he is still in Canada and has not yet been presented or arraigned on the pending U.S. charges. Nygard should not be permitted to invoke this Court's jurisdiction for the benefit of early discovery while refusing to recognize the Court's authority to preside over his criminal case.

In the civil context, the Second Circuit has held that a district court did not abuse its discretion in denying a defendant extraterritorial access to sensitive discovery materials, reasoning that because the defendant "had removed himself from the jurisdiction of the district court, [] the district court had no ability to enforce an appropriate protective order limiting his use of the documents produced." *SEC v. Ahmed*, 72 F.4th 379, 393 (2d Cir. 2023), *cert. denied sub nom. Ahmed v. SEC*, 144 S. Ct. 2658, 219 L. Ed. 2d 1284 (2024), *and cert. denied sub nom. Ahmed v. SEC*, 144 S. Ct. 2658 (2024) (internal quotations omitted). As the Second Circuit explained:

> The discovery material at issue was subject to a protective order under Rule 26 based on the confidential and sensitive nature of the documents, and the district court determined that the court could not enforce such an order because [the defendant] had removed himself from the court's jurisdiction. The district court's limitation of [the defendant's] extraterritorial access to the protected materials thus constituted a reasonable exercise of the court's "inherent authority to protect" its own discovery orders to limit [the defendant's] access to civil discovery in light of his status as a fugitive.

*Id.* at 394 (quoting *Degen v. United States*, 517 U.S. 820, 823 (1996). Those concerns are even more acute in this criminal case, which alleges a years-long and sophisticated effort by Nygard, his co-conspirators, and corporate entities under his control, to engage in acts of violence against vulnerable and minor victims. Even unsealing the PIRO application materials, much less allowing Nygard free-ranging extraterritorial discovery ahead of the hearing he requests, raises concern that should Nygard use discovery materials in a matter not sanctioned by an appropriate protective

order, the Government and the Court would have no redress. Moreover, the Government has reason to believe that Nygard continues to enjoy access to substantial financial assets, as well as to non-incarcerated individuals who remain loyal to him and to his purse. Offering Nygard additional information about the Government's evidence and witnesses before he has appeared in the District thus raises serious safety concerns.

Given Nygard's years-long history fighting his extradition and his refusal, even now, to fully submit to this Court's jurisdiction, the Court would be well within its authority to deny the Motion based on the fugitive disentitlement doctrine alone. However, where, as here, a motion is "is so plainly frivolous," the Court may elect to reject it on the merits. *See United States v. Baccollo*, 725 F.2d 170, 172 (2d Cir. 1983). For the reasons detailed *infra*, even in the absence of the fugitive disentitlement doctrine, Nygard's motion should be denied.

## II.    Nygard Has Not Made the Requisite Showing for a Probable Cause Hearing

Nygard demands a hearing "to establish whether the Government had/has requisite probable cause to restrain the assets" in the PIRO, and, in the alternative, to inspect grand jury minutes "to demonstrate the lack of probable cause for the seizure of property." (Mot. 3, 5). Although he makes a passing reference to *Kaley v. United States*, Nygard does not articulate the basis under which he contends he is entitled to a pre-trial hearing, nor has he made the showing required by applicable law. As this Court already determined, there is probable cause to believe that any and all property of Edson's Investments Inc., and any and all property of Brause Investments, Inc., constitute property used to commit violations of 18 U.S.C. §§ 1591 (sex trafficking) and 1594 (sex trafficking conspiracy). The defendant has made no showing to undermine that finding now. Moreover, the PIRO does not violate the defendant's Sixth Amendment right to counsel because the Edson's and Brause properties are assets directly subject to forfeiture. Nygard does not articulate a need for the restrained assets, but in any event a

defendant cannot use forfeitable funds to pay for his criminal defense.  His request for a hearing should be denied.

  A. <u>Applicable Law</u>

  The Constitution does not entitle a defendant to use crime proceeds to pay for his criminal defense. While the Sixth Amendment guarantees criminal defendants the right to adequate counsel, it does not guarantee indigent defendants the counsel of their choice. *See, e.g.*, *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). It is black letter law that a defendant "has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice." *Id.* at 626. The Supreme Court has held that "there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense." *Id.* at 631. Where it applies, forfeiture is mandatory, and forfeitable funds may not be released to pay for counsel. *See United States v. Monsanto*, 491 U.S. 600, 606-14 (1989).

  Courts are entitled to restrain, pre-trial, assets subject to probable forfeiture. *See* 18 U.S.C. § 982; 21 U.S.C. § 853(e); *see also, e.g.*, *United States v. Silver*, 2015 WL 1501619 (S.D.N.Y. March 31, 2015). A defendant's ability to challenge such a restraint is limited: only where a defendant demonstrates that, but for restrained funds, he is unable to afford counsel of choice, is he entitled to an adversary hearing as to whether probable cause exists to believe that restrained funds are properly forfeitable.  *See United States v. Bonventre*, 720 F.3d 126, 131-32 (2d Cir. 2013). "This requires more than a mere recitation; the defendant must make a sufficient evidentiary showing that there are no sufficient, alternative, unrestrained assets to fund counsel of choice." *Id.* at 131-32. This showing should include a disclosure of net worth, a "comprehensive" list of assets, and, rather than focusing on the seized assets enumerated in the Government's submissions, clarify

whether the defendant has access to other accounts and, if so, their value. *Id.* at 133. And regardless of whether the defendant makes such a showing, he is not entitled to challenge a grand jury's determination that the defendant committed the crimes providing a basis for forfeiture. *Kaley v. United States*, 571 U.S. 320, 339-41 (2014).[2]

## B. Nygard Is Not Entitled to a Hearing, Discovery, or Grand Jury Minutes

There is no basis for the Court to reconsider the PIRO and the Court's finding of probable cause. As already noted, Nygard cannot attack the grand jury's probable cause determination that he committed the crimes charged in the Indictment. *See Kaley*, 571 U.S. at 330-31. Moreover, this Court has already found probable cause to believe that the property of Edson's and Brause constitute property used to commit the Sex Trafficking Offenses. Accordingly, that property is properly restrained under the PIRO. The sole circumstance under which a defendant can challenge the Court's probable cause determination that the restrained funds are properly forfeitable is when he has demonstrated that, but for the restrained funds, he is unable to afford counsel of choice. *Bonventre*, 720 F.3d at 131-32. But Nygard fails to even allege, much less make any kind of showing, that the PIRO is preventing him from funding his counsel of choice. There is every reason to believe that he made that glaring omission because that circumstance is not present here.

As already discussed, this criminal case is in abeyance pending Nygard's extradition to the United States. The Government has not produced discovery; the Court has not set a schedule for

---

[2] In *United States v. Monsanto*, the Second Circuit held that the Fifth and Sixth Amendments entitle a criminal defendant to an adversarial, pre-trial hearing to address two questions: (1) whether there is probable cause to believe that the defendant committed the crimes providing a basis for forfeiture; and (2) whether there is probable cause to believe that the properties are properly forfeitable. 924 F.2d 1186, 1203 (2d Cir. 1991) (en banc). In *Bonventre*, the Second Circuit set the standard—demonstrated financial need—for obtaining such a hearing. 720 F.3d at 131. In *Kaley*, the Supreme Court held that a criminal defendant may not challenge a grand jury's probable cause determination but left undisturbed the remainder of *Monsanto* and *Bonventre*. *Se* 571 U.S. at 339-41 (2014); *see also United States v. Aventura Technologies, Inc.*, 607 F. Supp. 3d 278, 282-284 (E.D.N.Y. 2022).

pretrial motions or other deadlines; and Nygard has not yet surrendered to this Court's jurisdiction. Indeed, even on Nygard's counsel's representation, Nygard's appearance is expressly restricted to the "limited" purpose of litigating the Motion.  Nygard has not articulated a need for U.S. criminal counsel under these circumstances, let alone a need that would require unfettered access to the millions of dollars in restrained assets.

Moreover, Nygard should not be permitted to use the Restrained Property to fund his defenses in his Canadian cases.  Commonsensically, the Canadian prosecutions are governed by Canadian law and the Sixth Amendment does not apply to them.  Additionally, the Government is aware that historically, Nygard controlled extensive personal and corporate property within Canada, some of which was involved in the Sex Trafficking Offenses but all of which was beyond the Government's reach for purposes of restraining assets under the PIRO.  To the extent that Nygard seeks funds to aid his Canadian defenses, his remedy is not with this Court.[3]

Nygard's motion for a hearing should be denied until, at the earliest, he has been extradited and his need for U.S. criminal counsel becomes ripe. Even then, he must be required to make the detailed factual showing of his current financial condition, including his access to funds and property both inside and outside the United States.  If and only if Nygard is able to show that he does not have sufficient other funds, could the Court then consider Nygard's request for a hearing. The sole question that would be considered at any future hearing is whether probable cause exists to believe that Edson's and Brause as entities were involved in and used by Nygard and others to commit the Sex Trafficking Offenses, which the Government already has established and would

---

[3] The Government recently became aware that Nygard may still be deriving rental income from one of the Restrained Properties.  The Government is continuing to investigate but if true, this would possibly be a violation of the PIRO and, even alone, would likely defeat any *Bonventre* showing he attempts to make.

easily establish again.

Nygard's demand to inspect grand jury minutes should likewise be denied. "Grand jury proceedings carry a 'presumption of regularity.' " *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974)). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *Torres*, 901 F.2d at 233; *see also Bourne v. United States*, No. 21-2497, 2023 WL 3102700, at *2 (2d Cir. Apr. 27, 2023) (same). Nygard has made no such showing. Instead, he seeks the grand jury minutes to demonstrate that the grand jury did not make a probable cause determination that the Restrained Property was property involved in and used to facilitate the Sex Trafficking Offenses—a fact that is uncontested. Rather, as previously discussed, it was the Court that made the probable cause determination upon the Government's application, including the underlying Bill of Particulars (Dkt. 6), and pursuant to 18 U.S.C. § 1594(e)(1)(A). The motion for grand jury minutes should be denied.

## III.    Nygard is not Entitled to Pre-Trial Return of Evidence

Nygard's request for return of evidence seized from his person, the Residential Properties, and the New York Property should be denied not only because he has not appeared in this criminal case, *see supra* § I, but also because he has failed to show that the pretrial return of evidence is legally justified.

### A.   Applicable Law

To prevail on a pretrial motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g), a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the Government's need for the property as evidence has ended. *See United States v. Gotti*, 244 F.

Supp. 2d 120, 124-125 (E.D.N.Y. 2003); *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999); *accord Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005).

        B.  <u>Nygard is Not Entitled to Return of Seized Evidence</u>

Nygard has not satisfied any aspect of the Rule 41(g) standard.

*First*, Nygard has not demonstrated that he is entitled to lawful possession of all the property that is the subject of the Motion. While the Government does not dispute that the iPhone taken from Nygard's person belongs to him, the FBI seized a number of electronic devices during the relevant premises searches. Nygard has not demonstrated his personal ownership of those devices; indeed, he asserts that some of the seized devices belong to Biehare Agonafer. (Mot. 2). Nygard lacks standing to seek the return of evidence belonging to other persons. *See Ferreira*, 354 F. Supp. 2d at 410 ("Under Rule 41(g), the property [the movant] can recover is only that over which he can establish a sufficient ownership or possessory interest; he cannot recover property of another or property that was never in his possession."); *United States v. Pena*, No. 95 CR. 130 (AGS), 2000 WL 257132, at *1 (S.D.N.Y. Mar. 8, 2000).

*Second*, instrumentalities of a crime are not subject return under Rule 41(g). *See* Fed.R.Crim.P. 41(g) Advisory Committee Note, 2009 Amendments (Rule 41(g) "provides a process" "for return of the property, *excluding contraband or instrumentalities of crime*." (emphasis added)). The warrants providing authority to seize and search Nygard's phone and the electronics found at the Residential and New York Properties necessarily establish probable cause to believe that those devices are instrumentalities of the charged offenses. Indeed, the Government can confirm that Nygard's phone, for example, contains ample evidence that the device was used in the commission of the charged offenses. Nygard does not address this aspect of the Rule 41(g) standard in the Motion.

*Finally*, Nygard has not demonstrated that the Government's need for the seized devices

has ended. "A defendant's right to the return of lawfully seized property is subject to the Government's legitimate continuing interest in that property." *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002); *accord Acosta v. United States*, 2013 WL 2444172, at *3 (E.D.N.Y. June 5, 2013) (denying  motion for return of property because "the government has made a reasonable representation that these items may serve as evidence" in a pending prosecution); *United States v. Williams*, 181 F. Supp. 2d 267, 301 (S.D.N.Y. 2001) (denying motion for return of property because "the Government does intend to use this evidence at trial"); *Kee v. United States*, 2001 WL 897175, at *1 (S.D.N.Y. Aug. 9, 2001) (denying motion for return of property because "[t]he Government represents that all the items requested . . . have evidentiary value"). It is therefore unsurprising that "[c]ourts routinely deny motions pursuant to Rule 41(g) prior to the conclusion of a criminal proceeding." *United States v. Farhat*, 2022 WL 970780, at *5 (E.D.N.Y. Mar. 31, 2022). Here, where Nygard has not even made an initial appearance in the case and there is no trial date, let alone evidentiary stipulations, it is far from obvious that the Government does not need the electronic devices to establish, *inter alia*, chain of custody and/or authenticity.[4]

---

[4] Nygard has not articulated a legitimate need for the seized devices. More than two years ago, the Government made clear to one of Nygard's attorneys, William Barzee, Esq., its willingness to consider a tailored request for specific data for which Nygard could articulate a legitimate need (*e.g.*, business or banking information unconnected to the charged criminal offenses). Nygard, through counsel, has declined to make such a request, electing instead to file the Motion. As laid out in the Indictment, throughout the charged racketeering and sex trafficking conspiracies, Nygard and persons working at his direction engaged in witness tampering in connection with the charged offenses. *See* Indictment ¶¶ 3, 10(h). The Government is gravely concerned about providing Nygard with unfettered access to instrumentalities of the charged offenses while he remains outside the reach of this Court and its supervisory authority.

**CONCLUSION**

For the forgoing reasons, the Motion should be denied in its entirety.

Dated: New York, New York
February 7, 2025

Respectfully submitted,
DANIELLE R. SASSOON
United States Attorney
Southern District of New York

By:             /s/
Celia V. Cohen
Jacqueline C. Kelly
Allison C. Nichols
Assistant United States Attorneys